

FILED

March 23, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:44 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: David Ricketts**

**EMPLOYER: Dana Holding Corporation**

**DOCKET #: 2014-07-0023**
**STATE FILE #: 89100-2014**
**DATE OF INJURY: September 3, 2014**

**INSURANCE CARRIER/TPA: Security Risk Services/Sedgwick**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on March 11, 2015, upon the Request for Expedited Hearing filed by David Ricketts (Mr. Ricketts), the employee, on February 12, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the Employer, Dana Holding Corporation (Dana), is obligated to provide medical benefits by providing a panel of physicians.

The undersigned Workers' Compensation Judge conducted a telephonic Expedited Hearing on March 11, 2015. Charles L. Hicks represented Mr. Ricketts. Terri Bernal represented Dana. Considering the applicable law, testimony of the witnesses, argument of counsel and the technical record, this Court finds that Mr. Ricketts is not entitled to the requested benefits.

### ANALYSIS

#### Issue

*Whether Mr. Ricketts is entitled to a panel of physicians for an alleged carpal tunnel or other gradually occurring hand and arm injury.*

#### Evidence Submitted

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD)
- Dispute Certification Notice (DCN)
- Request for Expedited Hearing (REH)

The Court did not consider attachments to the above filings not admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and their attachments as allegations unless established by the evidence.

1

The Court admitted the following documents into evidence:

Exhibit 1: Medical Records of Dr. Blake Chandler (August 27, 2014---February 23, 2015, 23 pages)

Exhibit 2: Wage Statement (AWW: $ 1, 046.98/ Comp. Rate: $ 698.02)

## History of Claim

Mr. Ricketts worked for Dana as maintenance technician for four and one-half (4 ½) years. His job required him to maintain machinery and "if anything [broke], [he had to] fix it." His work was hand-intensive, requiring the use of tools and wiring. He had no problems with his hands before working at Dana.

Dana terminated Mr. Ricketts for cause on September 3, 2014 for falsifying company documents and sleeping on the job. Prior to his termination, he suffered a left shoulder injury on August 3, 2014. Dana accepted the shoulder injury as compensable. Mr. Ricketts contested his termination and requested workers' compensation benefits for temporary disability due to his shoulder injury in a separate Request for Expedited Hearing.[1]

Mr. Ricketts testified that, while working at Dana, his hands would go numb, "draw up," and cramp. He testified that the problems developed and increased in frequency and severity over the last year he worked at Dana. He believes the problems are work-related because he worked so many hours, up to seven days a week, and did nothing outside of work which would cause the problems.

Mr. Ricketts did not report his hand problems to anyone while working at Dana. After his termination, he reported to Jason Almand that he developed problems with his hands. He is "not real sure" of when he reported but believes it was "a couple of weeks" after his termination that he called and asked if "he could get somebody to look at [his] hands." He reported that his hands were cramping and going numb.

Mr. Ricketts testified that Mr. Almand "in not so many words" said "no" to his request for medical attention. He claims Mr. Almand's demeanor was "pretty hateful" and "irate." Mr. Ricketts first said he did not recall whether Mr. Almand offered a panel and he, Mr. Ricketts, hung up. He then testified, in the same line of questioning, that Mr. Almand "basically" said he would not give him a panel just "on [his] word" that he was injured. He described the conversation as "a screaming match" on the part of Mr. Almand.

Mr. Keith Henegar testified that he is the maintenance supervisor at Dana. His job duties include organizing the daily activities of approximately twenty (20) people, including Mr. Ricketts while Mr. Ricketts worked at Dana. Mr. Ricketts never reported any injury to his hands directly to him and he knew of no reporting by Mr. Ricketts to anyone else. On cross-

---

[1] This Expedited Hearing for the hand/arm injuries was heard by the Court immediately following the Expedited Hearing for the shoulder injury in Docket No. 2014-07-0024, bearing the same caption apart from docket number, and involving the same parties and counsel.

examination, Mr. Henegar admitted that he and Mr. Ricketts only had fifteen (15) minutes of "cross-over" of their respective shifts, with Mr. Ricketts present at the end of his night shift and Mr. Henegar present at the start of his day shift.

Mr. Jason Almand testified that he is the Employee Health and Safety Manager at Dana. He is directly involved with Dana's workers' compensation program and is familiar with Mr. Ricketts. He testified that Mr. Ricketts did not report any carpal tunnel injury to him when Mr. Ricketts worked at Dana. Following Mr. Ricketts termination from Dana, Mr. Ricketts telephoned Mr. Almand to request medical care for his hands. Because of what Mr. Almand considered a "unique situation," in that Mr. Ricketts reported an injury after his termination, he asked Mr. Ricketts to detail his hand problems in writing. He never received any written correspondence from Mr. Ricketts. He did receive a letter from Mr. Ricketts' attorney, advising of the claim, sometime in October or November 2014. He never saw any medical records where Mr. Ricketts voiced carpal tunnel complaints.

On cross-examination, Mr. Almand disagreed that Mr. Ricketts called him within two weeks of his termination to report a hand injury. He also disagreed with Mr. Ricketts' assertion that he told Mr. Almand about the specific problems he was having with his hands. Mr. Almand reiterated that he needed the complaints regarding his hands set forth in detail. In order "to insure good communication," Mr. Almand wanted the specific complaints in writing.

On rebuttal, Mr. Ricketts denied that Mr. Almand told him to write a letter detailing the specific complaints. However, Mr. Ricketts conceded, when cross-examined by Dana's counsel, that his attorney wrote a letter to Dana alleging his hand injuries.

Mr. Ricketts first saw Dr. Blake Chandler on August 27, 2014. He reported an injury to his left shoulder occurring on August 27, 2014 when he twisted his left shoulder while getting "out of a press." Ex. 2 at 2. A "Review of Systems" noted "Essentially unchanged." The physical examination noted "intact motor and sensory function to the upper extremities" and Dr. Chandler diagnosed rotator cuff tendonitis. *Id.* Dr. Chandler restricted Mr. Ricketts to no use of the left arm. Mr. Ricketts continued to see Dr. Chandler through February 23, 2015. At each visit, Dr. Chandler's "Impression" was variously noted as left rotator cuff tendonitis, rotator cuff tear, labral tear or labral cyst. The record from each visit also noted "intact motor and sensory function to the upper extremities." There is no mention in the records of carpal tunnel or complaints regarding the hands or arms.

Mr. Ricketts was not working as of the date of the hearing and has not worked since leaving Dana. He has not received medical care for his alleged carpal tunnel or other gradually occurring hand or arm condition.

### Mr. Ricketts' Contentions

Mr. Ricketts contends symptoms consistent with carpal tunnel, or another gradually occurring injury, occurred while he worked at Dana, because of performing hand-intensive work. He claims he reported his hand condition to Mr. Almand approximately two weeks after his termination from Dana. He further contends that Mr. Almand replied in a hateful way and

ignored his request for medical evaluation. He denies Mr. Almond told him to submit his allegations in writing. He is desirous of a panel of physicians to evaluate his hands.

## Dana's Contentions

Dana contends that Mr. Ricketts did not report any repetitive injury, such as carpal tunnel or otherwise, while employed. Further, Mr. Ricketts did not provide Mr. Almand any specific details of his hand and arm complaints after his termination. Mr. Almand, for the sake of clarity, asked for written details because Dana no longer employed Mr. Ricketts when he alleged his hand or arm injury. Mr. Ricketts never provided such documentation apart from letters from his attorney in October or November 2014.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. The employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014).

### *Factual Findings*

The Court finds that Mr. Ricketts did not report any injury, whether carpal tunnel or any other gradually occurring injury, to his hands or arms while employed at Dana. Mr. Ricketts' proof as to the alleged reporting of his injury after his termination from Dana for cause is too inconsistent and unreliable that the Court cannot finds it neither credible nor supportive of a finding that he suffered an injury arising primarily out of or in the course of his employment at Dana.

### *Application of Law to Facts*

For injuries occurring on or after July 1, 2014, the Tennessee Workers' Compensation Law requires a showing that an injury, including "cumulative trauma conditions" such as carpal tunnel syndrome, must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and … identifiable by time and place of occurrence…" Tenn. Code Ann. § 50-6-102(13)(A)(2014). Further, an injured employee shall immediately, or as soon thereafter as practicable, give notice of any injury to the employer. Tenn. Code Ann. § 50-6-201(a)(1)(2014). For gradual injuries, an employee must give the required notice either when the employee knows or reasonably should know he has suffered an injury that has resulted in permanent physical impairment or when the employee is rendered disabled from working by the injury and knows of its work-relatedness. Tenn. Code Ann. § 50-6-

4

201(b)(2014).

In this case, Mr. Ricketts points to no specific incident or set of incidents as being the mechanism of his alleged hand or arm injuries. He testified only that his hands were numb, cramping, or "drawing up." While he testified the dearth of physical activities away from Dana leads him to conclude that his alleged condition is work-related, he offered no explanation as to why he failed to communicate the hand issues to Mr. Henegar or to Mr. Almand while he was still employed. He described his work at Dana as hand intensive in direct questioning from his counsel, and confirmed that he suffered the alleged symptoms for up to one (1) year prior. He offered no explanation as to how he performed this hand-intensive work without reporting any problems for the entire one (1) year period. This is particularly true since, after his August 4, 2014 shoulder injury, he was compelled to work primarily with one arm. He did not request evaluation of his hands when reporting the shoulder claim. Mr. Ricketts' own testimony supports a finding that he had knowledge of both problems with his hands and believed his symptoms were work-related long before any conversation with Mr. Almand and any correspondence from his attorney to Dana.

The parties disagree as to both the timing and substance of the conversation between Mr. Ricketts and Mr. Almand. Mr. Ricketts testified he was "not real sure" as to when he actually reported any hand complaints to Mr. Almand after his termination. His testimony was less than clear as to the specifics of the conversation. The Court questions the validity of Mr. Ricketts' version of the event because, first, the injury report came so close on the heels of his termination for cause and, second, because his memory of the conversation is vague. The Court finds the evidence preponderates against a finding that Mr. Ricketts properly reported any alleged injury.

More importantly, there is no medical documentation in Dr. Chandler's records of any complaints related to carpal tunnel or issues with the hands or arms. The first visit of August 27, 2014 indicates that a "Review of Systems" is "unchanged," indicating some prior contact with Dr. Chandler. Further, Dr. Chandler found intact motor and sensory function of the upper extremities but made no notation of any numbness, cramping, or pain in the hands or arms. This finding remains unchanged in every record, up to and including that of February 2015. While the Court recognizes that any employee, including Mr. Ricketts, is not required to present proof of medical causation before reporting an injury or receiving care, this case is unique in that there is medical documentation from the relevant periods. Nothing in that medical documentation supports Mr. Ricketts' theory.

In summary, there are simply too many factual inconsistencies and questions regarding the timing of Mr. Ricketts' reporting of an alleged carpal tunnel or other gradual injury to order a panel for medical evaluation. Accordingly, this Court finds that Mr. Ricketts failed to demonstrate that he sustained an injury arising primarily out of and in the course and scope of his employment with Dana.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Ricketts claim against Dana and its workers' compensation carrier for the requested benefits is denied on the grounds of compensability.

5

2. This matter is set for Initial Hearing on June 17, 2015, at 9:00 AM Central Time.

**ENTERED this the 23rd day of March, 2015.**

_____
**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers Compensation. You must dial in at 731-422-5263 or 855-543-5038 toll free to participate in your scheduled conference.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven (7) business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the

6

appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of March, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Charles L. Hicks | | | | | X | Larry_hickslaw@bellsouth.net |
| Terri L. Bernal | | | | | X | tbernal@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

7